PER CURIAM
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, George Martin Gates IV, an attorney licensed to practice law in Louisiana.
PROCEDURAL HISTORY
The ODC filed two sets of formal charges against respondent under disciplinary board docket numbers 16-DB-036 and 16-DB-088. Respondent answered each set of charges, essentially denying any misconduct. The matters were then considered by separate hearing committees. Thereafter, the board filed in this court a recommendation of discipline pertaining only to 16-DB-036. Prior to any action by the court on that matter, the ODC filed a motion to remand, advising of the additional disciplinary matter (16-DB-088) involving respondent. We granted the motion to remand and 16-DB-036 was returned to the board for consolidation with 16-DB-088. The board subsequently filed in this court a single recommendation of discipline encompassing both sets of formal charges.
FORMAL CHARGES
16-DB-036
Count I
Respondent represented Glenn Elliot in a criminal matter. In December 2014, Mr. Elliot filed a disciplinary complaint against respondent, alleging that respondent failed to comply with requests for his file. The ODC sent letters to respondent, advising him to return the file to Mr. Elliot and reminding him of his obligation to cooperate in the disciplinary investigation. Respondent failed to respond, and the ODC issued a subpoena compelling his appearance on June 3, 2015 to submit to a sworn statement. Despite being personally served with the subpoena, respondent failed to appear. On June 4, 2015, respondent sent the ODC a postal receipt showing that he had mailed a package to Angola, Louisiana, where Mr. Elliot was incarcerated. Respondent gave no explanation for his *553 tardiness in sending to the file to Mr. Elliot or for his failure to appear for the sworn statement.
The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.16(d) (obligations upon termination of the representation) and 8.1(c) (failure to cooperate with the ODC in its investigation).
Count II
In July 2011, Jennifer O'Carroll hired respondent to represent her in a disabilities claim against her former employer. During the representation, respondent was unresponsive to Ms. O'Carroll's phone calls, e-mails, and text messages. On July 9, 2013, respondent notified Ms. O'Carroll via text message that her case had been dismissed due to a "lack of witnesses." Ms. O'Carroll continued to attempt communications with respondent, but he did not return her phone calls or messages. Ms. O'Carroll then sent respondent a letter via certified mail requesting the return of her file so that she could retain another attorney to assist her with her claim. Respondent failed to respond to the letter.
During the representation, respondent refused to answer discovery requests from the defendant, even after being twice compelled by the court to do so. Respondent was sanctioned $500 by the court, and still refused to comply. After filing a third motion to compel discovery, the defendant filed a motion for summary judgment. Respondent failed to respond to the motion, and the claim was dismissed.
On March 12, 2014, respondent gave a sworn statement to the ODC. At that time, respondent admitted his failure to timely pay the federal court sanctions. He eventually paid the sanctions on March 25, 2014, almost a year after they were due. Respondent also agreed to provide additional documents to the ODC within ten days, but he failed to do so. Respondent acknowledged that he did not take any depositions or collect any medical reports on behalf of Ms. O'Carroll. He also admitted his failure to file an opposition to the motion for summary judgment, which resulted in the dismissal of Ms. O'Carroll's claim. Respondent had agreed in October 2013 to refund his $2,500 fee, which he maintained was fully earned, but he failed to do so.
The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with diligence and promptness in representing a client), 1.5(f) (failure to refund an unearned fee), 8.1(c), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
16-DB-088
On July 1, 2015, Bernard Anderson paid respondent a $2,500 fee to represent his interests in a succession matter. Thereafter, Mr. Anderson became displeased with respondent's work, and along with opposing counsel, had difficulty communicating with respondent. Mr. Anderson discharged respondent and requested a refund, which he did not receive.
Mr. Anderson contacted the Louisiana State Bar Association ("LSBA") and was advised that respondent was ineligible to practice law. Between June 1, 2015 and July 27, 2015, respondent was ineligible for failure to comply with the mandatory continuing legal education ("MCLE") requirements. E-mail exchanges dated July 2, 2015 and July 6, 2015 indicate that respondent discussed the succession matter with opposing counsel while he was ineligible to practice law.
The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1(c) (a lawyer is required to comply with *554 all of the requirements of the Supreme Court's rules regarding annual registration) and 5.5(a) (engaging in the unauthorized practice of law).
DISCIPLINARY PROCEEDINGS
In March 2016, the ODC filed formal charges against respondent in 16-DB-036. Respondent initially did not answer the formal charges, and the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). One month later, respondent filed a motion to recall the deemed admitted order, which was granted by the hearing committee chair. The matter then proceeded to a formal hearing on the merits, conducted in January 2017.
In November 2016, the ODC filed formal charges against respondent in 16-DB-088. Respondent initially filed a motion to dismiss the charges, which was denied by the board. Respondent then filed an answer to the charges and the matter proceeded to a formal hearing on the merits, conducted in October 2017.
Hearing Committee Reports
16-DB-036
Following the formal hearing in this matter, the hearing committee summarized the relevant testimony as follows:
Count I - Respondent testified that Mr. Elliot's matter was referred to the Louisiana Appellate Project. It is unclear whether respondent understood that Mr. Elliot was requesting that his file be sent directly to him or requesting that the file be sent to the Appellate Project. Respondent testified that he aided in getting the court record to the Appellate Project for the appeal. Respondent testified that he was not personally served with the ODC subpoena and agreed to pick up the subpoena from an ODC representative. Respondent testified that he was asked to comply with the request of returning the file on June 3, 2015. Respondent complied with the request the next day by mailing the file to Mr. Elliot.
Count II - Jennifer O'Carroll testified that respondent was paid a $2,500 flat fee for the representation. Ms. O'Carroll became dissatisfied with the amount of communication she had with respondent, as their contact became less frequent and he was no longer "keeping in touch." Respondent testified that he never had a witness to support an opposition to summary judgment and was unable to submit a true affidavit of genuine issues of material fact. His failures to submit an affidavit or an opposition resulted in summary judgment being granted. Respondent testified that he offered to return the fee.
After considering this testimony and the other evidence in the record, the committee made the following findings:
Count I - There is contradictory evidence as to whether respondent had his proper address on file for the ODC. It is clear that he immediately responded when he was notified of Mr. Elliot's request for the file. Respondent provided competent representation for a serious criminal charge and timely referred Mr. Elliot to the Louisiana Appellate Project, although there is some question as to whether he acted expeditiously in his commitment of reasonable due diligence and promptness in representing his client.
Count II - Respondent timely pursued Ms. O'Carroll's case, but he did not have any witnesses to oppose the motion for summary judgment. He did a poor job of continuing to inform the client of the status and circumstances of her case and was slow in determining that there was no evidence to oppose summary judgment. Without question, he spent a significant amount of time working on the file. Although *555 the $2,500 fee seems to have been earned, respondent offered to return the fee and testified that he is still willing to do so.
Based on the above findings, the committee determined respondent violated Rules 1.3 and 1.4 (failure to communicate with a client).
Based on these findings, the committee recommended respondent be publicly reprimanded and that he be required to attend "continuing legal education in the area of Professionalism, Ethics, and/or Law Office Practice."
The ODC filed an objection to the hearing committee's report.
16-DB-088
Following the formal hearing in this matter, the hearing committee summarized the relevant testimony as follows:
Respondent noted that since Hurricane Katrina, mail for him that was addressed to his New Orleans address was sometimes forwarded to his Maryland address, and vice versa. He attributed the mail delivery problems to the U.S. Postal Service. Respondent testified that he has lived in the Washington, D.C. and Maryland area and in New Orleans, where he visited to care for his parents and to work on the family property.
Respondent completed his 2014 MCLE hours in January 2015, resulting in the assessment of a late fee. On May 1, 2015, this court sent a notice to respondent advising him of a June 1, 2015 ineligibility date, pertaining to the necessity that he pay the outstanding $250 delinquency penalty related to the 2014 MCLE hours. The notice also stated that if certification of ineligibility became effective, respondent would have to pay a $350 delinquency penalty and reinstatement fee. Respondent testified that he did not recall receiving the notice.
On June 3, 2015, the Director of the MCLE Committee e-mailed respondent to confirm that he had the requisite hours for compliance, to request the whereabouts of his late fee, and to advise that the "last date any correspondence could be postmarked was June 1." Respondent testified that if the e-mail had mentioned suspension, he would have immediately taken care of the late fee, but the director said nothing of suspension or ineligibility. Respondent testified that he understood how failure to acquire the requisite MCLE hours could lead to ineligibility, but was unaware that delinquency in paying the late fee would do the same.
Respondent testified that he learned of his ineligibility on July 16, 2015, when a criminal court judge informed him that she could not find his name on the list of eligible attorneys. Once he learned of his ineligibility, he informed the court of his status, asked for a continuance in another matter, and shut everything down.
On July 27, 2015, respondent paid the $350 late fee and penalty, picked up a letter of good standing, and called the attorney for Mr. Anderson's brother to inform him of the circumstances and of his recommendation that Mr. Anderson contact him. That same day, the Director of the MCLE Committee sent a notice to respondent, informing him that he had been reinstated. Respondent testified that he was not anticipating a letter of that same date and did not recall receiving the notice.
Respondent acknowledged that during his ineligibility, he represented Mr. Anderson in the succession, accepted an attorney's fee, and exchanged e-mail communications with counsel for Mr. *556 Anderson's brother.[1] Copies of their e-mail exchanges as well as text message exchanges between respondent and Mr. Anderson are included in the record.[2]
After considering the testimony presented at the hearing, as well as the other evidence in the record, the hearing committee made the following factual findings:
Between June 1, 2015 and July 27, 2015, respondent was ineligible to practice law for noncompliance with 2014 MCLE requirements. The only evidence of law practice during this period was for a portion of July 2015. Although he was properly noticed of his ineligibility, he engaged in the practice of law from July 1, 2015 to July 8, 2015. E-mail and text messages exchanged between respondent and Mr. Anderson reflect that respondent met with Mr. Anderson on July 1, 2015 and received $2,500 from Mr. Anderson. The next day, respondent contacted counsel for Mr. Anderson's brother, received a draft detailed descriptive list, and began the process of setting up a meeting with the brother and his attorney to discuss the estate.
There is no evidence that respondent practiced law in June 2015 or after July 8, 2015 (until his July 27, 2015 reinstatement). On July 16, 2015, after learning of his ineligibility, respondent properly noticed the court for continuances. Between July 16, 2015 and July 27, 2015, he continued to communicate with Mr. Anderson via text messaging, but the messages do not reflect that he was practicing law or that he rendered any legal advice. However, there is also no evidence that he notified Mr. Anderson of his ineligibility until he was reinstated. The communications are in the nature of reporting case status only, and fail to report that legal services were discontinued or suspended due to his ineligibility.
Evidence shows respondent began legal services to move the matter forward the day after Mr. Anderson made payment, diligently worked to further Mr. *557 Anderson's cause, and communicated same to Mr. Anderson. The problem is that respondent was ineligible to practice law at the time, and thus ineligible to represent Mr. Anderson before the courts or in any negotiations with the brother's attorney, who also relied on respondent's eligibility in representing his own client. Mr. Anderson was dissatisfied with respondent because he was ineligible to practice law. Respondent agreed to refund Mr. Anderson's fees, which he did after being reinstated. His post-reinstatement e-mails show he continued to assist Mr. Anderson.
At the hearing, respondent was straightforward, cooperative, and credible in his responses, offering plausible explanations.
Based on the above findings, the committee determined respondent violated Rules 1.1(c) and 5.5(a).
The committee determined that respondent negligently violated duties owed to his client, having not paid the requisite fees for eligibility to practice law. His misconduct caused potential harm to his client in that any agreements confected during respondent's eligibility were subject to contest. After reviewing the ABA's Standards for Imposing Lawyer Sanctions , the committee determined that the applicable baseline sanction is suspension.
The committee found the following aggravating factors are present: a prior disciplinary record (a 2014 admonition for failing to pay $5,000 to a former client) and substantial experience in the practice of law (admitted 1999). The committee found the following mitigating factors are present: absence of a dishonest or selfish motive and a cooperative attitude toward the proceedings.
After further considering this court's prior jurisprudence addressing similar misconduct, the committee recommended respondent be publicly reprimanded.
The ODC filed an objection to the hearing committee's report.
Disciplinary Board Recommendation
16-DB-036 and 16-DB-088
After considering the totality of the misconduct, the board recommended respondent be suspended from the practice of law for six months, fully deferred, subject to a one-year period of probation. As conditions of probation, the board recommended that respondent attend the LSBA's Ethics School, make full restitution of the fees paid on behalf of Ms. O'Carroll, and pay all costs and expenses of this proceeding.
Neither respondent nor the ODC filed an objection to the disciplinary board's recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5 (B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks , 09-1212 (La. 10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield , 96-1401 (La. 11/25/96), 683 So.2d 714 ; In re: Pardue , 93-2865 (La. 3/11/94), 633 So.2d 150.
The record in this consolidated matter supports a finding that respondent neglected a legal matter, failed to refund an unearned fee, failed to return a client file upon request, practiced law while ineligible to do so, engaged in conduct prejudicial to the administration of justice, and failed to cooperate with ODC in its investigations. Based on these facts, respondent has violated *558 Rules 1.1(c), 1.3, 1.5(f), 5.5(a), 8.1(c), and 8.4(d) of the Rules of Professional Conduct.
In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis , 513 So.2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington , 459 So.2d 520 (La. 1984).
Respondent violated duties owed to his clients, the legal system, and the legal profession. His conduct was negligent in some instances and knowing in others, and caused actual and potential harm. The baseline sanction for the misconduct is suspension. The record supports the following aggravating factors: a prior disciplinary record and substantial experience in the practice of law (admitted 1999). The following mitigating factors are present: absence of a dishonest or selfish motive, personal problems, timely good faith effort to make restitution or rectify the consequences of the misconduct, and full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings.
Considering the circumstances of this matter, we will adopt the disciplinary board's recommendation and suspend respondent from the practice of law for six months, fully deferred, subject to a one-year period of unsupervised probation governed by the conditions set forth in the board's report.
DECREE
Upon review of the findings and recommendations of the hearing committees and disciplinary board, and considering the record, it is ordered that George Martin Gates IV, Louisiana Bar Roll number 26295, be and he hereby is suspended from the practice of law for a period of six months. It is further ordered that this suspension shall be deferred in its entirety and that respondent shall be placed on unsupervised probation for a period of one year, subject to the conditions set forth in this opinion. The probationary period shall commence from the date respondent and the ODC execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
HUGHES, J., dissents.
GENOVESE, J., would disallow any deferral of sentence.

Respondent also confirmed that during his ineligibility, he appeared in court to represent another client in a criminal matter.

The dates and details of the relevant e-mails and texts are as follows:
1. July 2, 2015: Text to respondent with contact information for the attorney for Mr. Anderson's brother and text from respondent to Mr. Anderson confirming contact with the attorney. E-mail exchange between respondent and the attorney, including delivery of a draft of the succession paperwork, a detailed descriptive list, and a representation from the attorney that appointing brothers as independent co-administrators would be easier, with respondent's acknowledgement of receipt.
2. July 6, 2015: Respondent asks the attorney for Mr. Anderson's brother if "both of our clients meet... [in] our office," to which the attorney responded with a request for a proposed agenda, points for discussion, and a conference call.
3. July 8, 2015: Text to Mr. Anderson that respondent was in a hearing on illegal weapons possession and an acknowledging text from Mr. Anderson.
4. July 16-24, 2015: Eleven texts exchanged between respondent and Mr. Anderson in which respondent asks for his e-mail address and explains that he is waiting for a response from the attorney for Mr. Anderson's brother. There is a reference to entries of $1,500 and $1,000. On July 20, 2015, respondent replies to Mr. Anderson that he is in a hearing concerning a pro se representation in the wrongful foreclosure of his deceased parents' New Orleans home. There is also a statement about background checks.
5. July 28-29, 2015: Text exchanges show respondent notified Mr. Anderson of his reinstatement, described a specific time for a conference call, suggested contacting his brother's attorney, suggested a resolution in the way of court appointment of co-administrators, and stated that he would return the unearned fee.